UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

UNITED STATES OF AMERICA ) Docket No. A 15-CR-350(1) SS
)
vs. ) Austin, Texas
)
DEQWON SAQUOD LEWIS ) August 12, 2016

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE SAM SPARKS

APPEARANCES:

For the United States: Mr. Grant Sparks
Assistant U.S. Attorney
816 Congress Avenue, Suite 1000
Austin, Texas 78701

For the Defendant: Mr. Jose I. Gonzalez-Falla
Mr. David M.C. Peterson
Assistant Federal Public Defenders
Lavaca Plaza
504 Lavaca Street, Suite 960
Austin, Texas 78701

Court Reporter: Ms. Lily Iva Reznik, CRR, RMR
501 West 5th Street, Suite 4153
Austin, Texas 78701
(512)391-8792

Proceedings reported by computerized stenography, transcript produced by computer.

09:36:35 THE COURT: 15-CR-350, United States vs. Deqwon Saquod Lewis.

09:36:40 MR. SPARKS: Grant Sparks for the United States.

09:36:42 MR. GONZALEZ-FALLA: Jose Gonzalez-Falla for Mr. Lewis, your Honor.

09:36:44 Good morning.

09:36:44 THE COURT: Good morning.

09:36:54 Mr. Lewis, if you'll tell me your full name and your birth date, please, sir.

09:36:58 THE DEFENDANT: Deqwon Saquod Lewis, September 19, 1985.

09:37:02 THE COURT: And you don't have to lean over. It will pick up.

09:37:06 Have you had the opportunity to sit down with Mr. Gonzalez-Falla and go over the presentence investigation made by the United States Probation Department?

09:37:16 THE DEFENDANT: Yes, your Honor.

09:37:18 THE COURT: In addition to that, I have received a lot of things in this case. Mainly, I have received a letter from the defendant. I've received a letter from a sister and a mother and a friend, and I will attach those to the presentence report, since I have read and reviewed them, so that anybody that reviews the presentence report will see the perspective, thoughts of those people.

09:37:57 And then, I have a motion for downward variance that we

will go over, filed on behalf of the defendant, the government's response to that, the reply to the government response to it, and then, the government's notice of intent to offer evidence at sentencing.

The United States Probation Department has calculated a guideline range of 292 to 365 months, with the information Mr. Lewis is 30 years of age. His criminal conduct consists of a conviction of -- two convictions of driving with a suspended license in 2005, in 2008, attempted assault and obstruction with a police officer. He's had multiple -- over 20 traffic violations. He was also convicted in 2009 for attempted fleeing and eluding law enforcement officers. He has four outstanding warrants, but they're all driving violations.

I have two objections by the defendant. First, the role.

MR. GONZALEZ-FALLA: I think role, Judge, is the only objection.

THE COURT: Yeah. That's just the organizer/leader.

Do you wish to present any evidence?

MR. GONZALEZ-FALLA: I don't, your Honor.

THE COURT: I've heard the trial.

MR. GONZALEZ-FALLA: The Court heard the trial, and I think that there's not really any dispute concerning the facts. I think it's just how they're applying. You know, it's just a significant adjustment that he receives of, when you look at it,

09:39:54 four to five years, based on that adjustment, and I don't believe that his role is that different than any other defendant to warrant that kind of an increase in his punishment. So that's the only -- and I've made my arguments in what I filed. So that's all I have to say about that matter.

MR. SPARKS: Government's also raised --

THE COURT: Mr. Sparks, I guess, for the record, I ought to say that you've heard this before, but we're not related.

MR. SPARKS: Yes, sir. That is correct.

And the government has nothing to add other than the summary that's set out in paragraph 26 of the presentence investigation report, of course, the trial testimony. It's just a different interpretation of the facts, your Honor.

THE COURT: Well, the objection is overruled.

Mr. Lewis was clearly in charge of this. Whether he did it by conduct or intimidation, it doesn't really make any difference. The truth of the matter is, of the two that were charged with this crime, he was in charge of most things, like where they were going to go, how they were going to go. The codefendant, I had no evidence anywhere that she didn't do anything that he didn't suggest or instruct.

So as far as the guidelines are concerned, he earned the leader/organizer evaluation of II. He only gets II because of the number of people involved in the criminal activity.

Do you know of any legal reason we shouldn't proceed with sentencing?

MR. GONZALEZ-FALLA: No, your Honor.

THE COURT: Does the government have any reason not to proceed?

MR. SPARKS: No, your Honor.

But you referenced the notice of intent to offer evidence. It was document 101. I'd just offer Exhibits -- excuse me, Attachments A and B for sentencing purposes, just out of an abundance of caution. I think it's probably part of the record, but I thought I should say on record.

MR. GONZALEZ-FALLA: Recording and the transcript?

MR. SPARKS: Yes. The recording and the transcript.

THE COURT: What is the purpose of putting in the record? I, of course, excluded it from the trial and --

MR. SPARKS: If I might, that's different --

THE COURT: I've heard it in pretrial motions and I heard it in the trial to exclude it. I mean, there's got to be some purpose.

MR. SPARKS: If I might, your Honor, that's a different recording. The recording that I believe -- I may be incorrect -- that you're referencing was a -- was what I'm going to refer to as the rap lyric recording.

THE COURT: Yeah.

MR. SPARKS: The CD attachment was presented and those

presented evidence was not a recording of the conversations that took place between Mr. Lewis and Ms. Moore about -- in summary, it's basically recruiting tactics and techniques and it's -- it was a separate audio recording.

THE COURT: Okay. All right. Objection?

MR. GONZALEZ-FALLA: Well, no, Judge. I've received notice of it. And I think you've got a summary of the conversation. I don't know if we'd have to play it. I think --

THE COURT: No. I'm not going to play it.

MR. GONZALEZ-FALLA: Okay.

THE COURT: But I'll put it in the record for what it's worth. It mainly has the words to the rap?

MR. GONZALEZ-FALLA: Well, Judge, he's actually talking about -- as Mr. Sparks referred, about, you know, how to get money, how to -- it's --

THE COURT: How not to work.

MR. GONZALEZ-FALLA: How not to work. Exactly.

THE COURT: Yeah.

MR. GONZALEZ-FALLA: How to have other people work so you don't have to.

THE COURT: I don't think the song is going to sell any records.

Okay. Well, with that out of the way, Mr. Lewis wrote a good letter. The problem with this is from an objective view -- I don't know if you can have an objective view -- the

criminal activities is so bad. That's why the guidelines are so high. The activities that you participated in and your personal activities that I heard in the trial, it's hard for me to believe a person would do that. As a matter of fact, it's almost impossible for me to believe a person would do that.

And yet, I get a nice, intelligent letter from you and here you are. But you have the right to say anything that you wish. I'll be glad to listen to you.

THE DEFENDANT: Thank you, your Honor.

I just want to say as far as the victims that affected -- that was affected in this crime, that my dearest sympathies go out to them and their families, that somehow they can hopefully -- I pray every night that they could just put this behind them, continue with they life and be successful and do whatever they have planned that they want to do with they life.

I just want to say that having time to sit down and have a clear mind and not be doing drugs every day, I realize a person who try to hustle and manipulate and scheme to get money is just a foolish person to be called a man. I never want to be associated with anything like this ever again in my life. That's really all I have to say, your Honor. Appreciate it.

MR. GONZALEZ-FALLA: Judge, I think I've laid out my argument and I don't really want to go over them again. I know the Court has read what I filed. I think that what I'm requesting is a 15-year sentence. The government's asking for 25

years. We're both seeking substantial -- we both believe that substantial sentences are appropriate. The guidelines are certainly extraordinarily high.

And it is a serious case. And as I've explained, the factors that really drive the punishment, when you look through them and then, you look at Mr. Lewis, I believe that a 180-month sentence would be a fair and just sentence. It certainly is a -- it's the kind of sentence that you see imposed on serious drug traffickers, on people who possess firearms that have violent felony records, on people who kill other people.

This is not a second-chance sentence. This is a "That's it. You are going to be incapacitated and society is going to be protected." And that's what that sentence says and that's what will happen, whether it's 15 or 25. And the question is whether the 25 is necessary. And I understand that that's what the guidelines are recommending. They certainly reflect the gravity of the situation.

I don't know that Mr. Lewis, certainly when he was driving around and doing the drugs and engaged in this awful activity, fully appreciated just how wrong it was. He was in a different place than he is now and that he has been as he's been sitting in jail for all this time. You know, the most time that he'd done before was four days. And it's just been a real wake-up for him. And when he emerges from prison, whether he's 45 or 55 years old, it will be an experience that will change

him.

And so, I'm just asking Mr. -- you know, Mr. Lewis has reflected on what he has done and how he has affected other people. I certainly saw it and I certainly didn't -- and I am very sensitive to the harm that his activity caused other people, and I think he's aware of that, as well.

So that said, Judge, I have nothing further to add other than just you have what we've written and I believe that that will be a fair and just sentence.

MR. SPARKS: Just two things from the government, your Honor.

The suggestion of a 25-year sentence was meant -- as set out in my pleading, was meant to be a "for." Something less than 25 certainly would not be merited, but certainly something more is merited based on the facts in this case and Mr. Lewis' involvement.

The other thing that's -- the only other thing to add containing our pleading and our position, as well, is that C.M., minor from Ohio, is not able to be present. So her testimony serves as her victim impact statement in this case, which you heard her testimony. She was damaged physically, emotionally, psychologically and, turns out, has had some financial consequences, as well, on her.

THE COURT: It's my understanding none of the victims made a claim.

09:48:41 PROBATION OFFICER: That's correct, your Honor.

09:48:43 MR. SPARKS: No claims were made. I do anticipate a victim impact statement on behalf of the other victim in the case here at the appropriate time. The only other thing mentioned in terms of just victim impact is --

09:48:57 THE COURT: What do you mean at the appropriate time? This is sentencing.

09:48:59 MR. SPARKS: Well, I mean just in a few minutes, which I'm sure --

09:49:02 THE COURT: Oh, I'm sorry.

09:49:03 MR. SPARKS: Yes, sir.

09:49:04 And the other only thing to add, really, in terms of the victim that is not present, of course you heard the testimony about the whipping and all that. As bad as that is, it's -- as related, it's the memories of the sexual violence that the man perpetrated on her that's going to stick with her for a lifetime, more than that whipping, as bad as that was. And I know the Court's going to take that into consideration.

09:49:35 THE COURT: Probation have anything they wish to say?

09:49:37 PROBATION OFFICER: No, your Honor.

09:49:38 THE COURT: Anybody wishes to speak at this sentencing?

09:49:56 MR. DAVID M.: Sir, my name's David M. I'm K. -- or, I'm sorry. I'm one of the victims that was -- it's just hard for me, sir. It really is. My daughter wrote, you know, the victim impact statement. I can't forgive right now. I really can't. I

just -- it's a gross -- it's an atrocity.  I'm just saddened that he would come to our state and try to take our children and do things that he's done, and then, have a trial that we're paying for, and to smirk and the tone of his attitude has totally changed since then, of course.  But I still have no remorse for him for what he's done.

This is from my daughter:

There's no easy way to start this letter.  My dad told me that I should write a letter, but honestly, I could care less to take the time to do this.  I'm doing this for my dad.  On Wednesday, August 10, I turn 16, and even though I spent it in juvie, or juvenile detention, it was better -- it was a better birthday than last year when I was with both of you.  I'm not going to say you took my innocence from me because I'm not innocent, but you took the last of my innocence away.

Deqwon, I thought I was in love with you.  I just wanted to show you that I was loyal and would do whatever it would take to make you happy.  Now that I know that you didn't care about me or C., you make me sick.  And I'm so glad that your baby momma doesn't allow you to see your daughter because you are a horrible man, and your daughter's better off with just her mom because her dad is a disgusting, perverted lowlife and a sorry excuse of a man.  Imagine if a man did the things you did to me to your daughter.  Really, just think about it.

Even though it was a bad experience, I would not take

it back. I used to think I didn't have a purpose in life, but God has shown me the way. I have a story and I want to share it with as many people as I can. I want to be a voice for all of the girls out there who have been trafficked and are too scared to speak up. I want to help as many of these girls that I can. I also want to let y'all know that I forgive both of you.

God has taught me how to forgive, even at the hardest times. God has helped me to realize what love really is. God is the one and only man that I will let have control over my life. Thank you for helping me open my eyes and see that living the fast life is not all it adds up to be. This experience has made me a stronger person and has helped me to get closer to my dad.

So thank both of you. I hope that you really think about how you have been as people. I hope while you both are in there, you'll have time to let God into your hearts. You both have helped me to be a strong-minded person. Believe it or not, God will help you find your inner peace. I think you both should give me -- give Him a chance. God, that's what she was talking about. You never really realize how strong you are until you have no choice but to stay strong.

I thought after all of this, I would hate both of you, but honestly, I feel bad for you both because the decisions and things you did show -- you did show how weak of a person you both are. God can make you strong and that's a fact because he made me strong. K.

09:53:34 I also wanted to add, I did a little research in just looking and Michigan was ranked second. Of course, it's the internet, so I'm not positive about, you know. But the Michigan is the number two rated in human trafficking in the United States other than Nevada.

09:53:52 My opinion is, don't mess with Texas. Don't come to our state, don't try to mess with our kids. I was in here, I looked around and saw all of this youth, all of this innocence. And for you to come into our state, back and forth, and try to take my daughter, I probably won't ever forgive you. But like I said, you need to find God.

09:54:17 And I ask that you give him the maximum sentence because the arrogance, and then, the ploy to put her on -- one or the other, they both knew what they were doing. I know that Starisha had given a statement when they picked her up when they were transferring her with Reid that she was educated. She was well-educated. So she knew what she was doing and he did, too.

09:54:40 Judge, I'd like to thank you, sir, for your time and efforts for the trial. I know it was a long trial. I would like to thank the federal government, the city of Lubbock, Flint, Michigan, all the law enforcement, the DPS, everyone involved in there. And I just beg of you, sir, to please give him the maximum amount because I don't want to see it happen to anyone else.

09:55:05 And there's no reason to be nice. I mean, the guy's

not even a part of his family's life. That's the problem with our society nowadays. It's easy to make them, but it's -- takes a real man to raise them. Thank you, sir.

THE COURT: Anyone else? Anything else, Mr. Lewis? Do you have anything else you want to say, sir?

THE DEFENDANT: No, your Honor.

MR. GONZALEZ-FALLA: No, your Honor.

THE COURT: All right. Okay.

Deqwon Saquod Lewis, I sentence you to a term in the penitentiary of 300 months. It's a guideline sentence. It's not the maximum sentence, and the reason for it is that your criminal history is not calculated high under the federal law. 300 months is a long time in custody. That will be 300 months on Count 1, 300 months on Count 2, 300 months on Count 3 to run concurrent for a total of 300 months.

Following that, you will have five years of supervision on Count 1, five years of supervision on Count 2, five years of supervision on Count 3. They will run concurrent.

Because of the nature of your background with regard to consumption of drugs, you will not take any illegal drugs. You will not drink alcohol. You'll be -- because of your conduct in this case, obvious that you are in need of mental health programs. So no alcohol consumption. Drug abuse and mental health programs will be available. You will be tested, counseled and participate in those programs, if necessary.

09:57:56 In the event of any mental health program, if a physician prescribes medication, you will take it. You have been convicted of a sexual offense, I assume, required to register.

09:58:15 PROBATION OFFICER: Yes, your Honor.

09:58:20 THE COURT: So you are mandated by the Sex Offender Registration and Notification Act. You will participate in a sex offender treatment program approved by the probation officer. You will abide by all program rules, requirements and conditions of the sex offender treatment program, including the submission to polygraph testing to determine if you're in compliance with the condition of release. You may be required to contribute to the cost of services based on your ability to pay.

09:58:57 Since you're required to register under the Sex Offender and Registration Notification Act, you will submit your person and any property, house, residence, vehicle, papers, computers, or other electronic, or data storage devices, or media and effects to a search at any time during the five years with or without a warrant by any law enforcement or probation officer with reasonable suspicion concerning a violation of condition of supervision or a violation of the law.

09:59:28 You'll be required to submit to periodic polygraph testing at the direction of the probation officer as a means to ensure that you're in compliance with the requirements of supervision in the program. You may be required to contribute to the cost of services based on your ability to pay. You will

follow all of the lifestyle restrictions or treatment requirements that are set out in the program by the probation officer through the court; and you will continue those restrictions as they pertain to avoiding risk situations throughout the course of supervision.

This requires not residing or going to places where minor or minors are known to frequent without prior approval of the probation officer. You will not associate with any child or children under the age of 18, except in the presence and supervision of an adult, specifically designated in writing by the probation officer. The probation officer will notify the designated adult of the risk occasioned by your criminal record or personal history and characteristics. You will permit the probation officer to make that notification.

And you will have no contact of any nature with the victims in this case, C.M. or K.M. Because of your financial condition, I don't impose any fine, but I do impose the mandatory $100 assessment under the Victims of Crime Act on each count for a total of $300, which you must pay immediately or work out at your earliest opportunity.

All other terms and conditions of supervision in the standing order of this district will be in full force and effect. Any other conditions that are necessary?

PROBATION OFFICER: No, your Honor.

THE COURT: Let the record reflect no claim has been

made; and therefore, there is no restitution involved in the case.

I'm going to seal the presentence investigation. Nobody can come in and read about you, Mr. Lewis. I've attached all of the letters that I have received, including yours, to it so anybody would -- who reads it will see those perspectives.

I have overruled the motion for downward variance. My last comment in this case is, for those of you out there watch on television that tell me that marihuana isn't dangerous, this case is all about marihuana. Every damn minute of it. So as you go home to your children and your loved ones, remember this case. It doesn't make any difference the age. Didn't make any difference to anything of this horrible case if you had to sit down and listen to the evidence. It's all about marihuana. What, 25 states are going to try to legalize it? If so, we'll have more of these.

My last obligation to you is to give you this letter. You have 14 days from today to instruct Mr. Gonzalez-Falla to file a notice of appeal. You have the right to appeal anything that occurred during the trial, pretrial, or anything in this sentence. All you have to do is instruct him to file a notice of appeal, and he's required to do it and he will do it.

Mr. Gonzalez-Falla.

MR. GONZALEZ-FALLA: Yeah. There is one objection to the conditions of release that I think Mr. Peterson would like

10:03:58 to --

10:03:58 THE COURT: Yes.

10:03:59 MR. PETERSON: Good morning, your Honor.

10:04:00 I've been tasked with this. It's -- we object to the 10:04:05 requirement that as a condition of supervised release, Mr. Lewis 10:04:10 be required to follow all lifestyle restrictions and treatment 10:04:13 requirements imposed by the therapist. We believe the Fifth 10:04:16 Circuit has ruled --

10:04:17 THE COURT: If you would read the transcript, you will 10:04:21 see as directed by the Court.

10:04:24 MR. PETERSON: As directed by the Court. I'm still not 10:04:27 sure in the light of changing case law that that's not an 10:04:31 improper delegation of authority. So I need to preserve that 10:04:34 objection since that is actually developing since very recently 10:04:38 under United States vs. Morin.

10:04:40 THE COURT: Well, let's just make it clear so that you 10:04:45 can tell the circuit. The Judge will order any recommendations 10:04:53 by the therapist that the Judge believes are appropriate.

10:04:58 MR. PETERSON: Yes, your Honor.

10:05:00 We'd also renew -- well, we'd object to the sufficiency 10:05:03 of -- we'd object to the sentence under 3553(a), in light of our 10:05:07 motion for a downward variance, as greater than necessary under 10:05:15 3553(a), your Honor.

10:05:16 THE COURT: Well, if I'd followed 3553(a), I would have 10:05:21 sentenced him to 360 months. That objection's overruled.

10:05:29 MR. GONZALEZ-FALLA: Judge, would you recommend him for placement in Michigan? Or, actually, Georgia where his father resides?

10:05:33 THE COURT: I have no -- just give me the town.

10:05:35 MR. GONZALEZ-FALLA: Well, his father lives in Atlanta. Atlanta, Georgia, your Honor.

10:05:39 THE COURT: Close to Atlanta as possible. I don't have an objection no that.

10:05:44 MR. SPARKS: Judge, there's a new Justice For Victims of Trafficking Act that mandates a $5,000 fee for any non-indigent defendant for each count of conviction. Government is not -- our position isn't that he is not indigent. We believe he is. But I think in light of the new statute, I think there may need to be a finding of indigency so that 5,000 per count of conviction is not assessed, your Honor.

10:06:12 THE COURT: Well, there's no question that he's indigent. He's sitting here with a federal public defender who is an outstanding lawyer. He's got good representation, but I've appointed him. So that's why I didn't bring it up. He's not going to qualify on that. He's not going to be required to pay on that. He doesn't have anything to pay.

10:06:33 Anything else, Mr. Gonzalez?

10:06:35 MR. GONZALEZ-FALLA: No, your Honor. Thank you.

10:06:36 THE COURT: Okay. I remand him.

(End of proceedings.)

* * * * * *

UNITED STATES DISTRICT COURT)
WESTERN DISTRICT OF TEXAS )

I, LILY I. REZNIK, Certified Realtime Reporter, Registered Merit Reporter, in my capacity as Official Court Reporter of the United States District Court, Western District of Texas, do certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

I certify that the transcript fees and format comply with those prescribed by the Court and Judicial Conference of the United States.

WITNESS MY OFFICIAL HAND this the 22nd day of September, 2016.

/s/Lily I. Reznik
LILY I. REZNIK, CRR, RMR
Official Court Reporter
United States District Court
Austin Division
501 W. 5th Street, Suite 4153
Austin, Texas 78701
(512)391-8792
Certification No. 4481
Expires: 12-31-16